LATHAM & WATKINS LLP
  David A. York (CSBN 89942)
135 Commonwealth Drive
Menlo Park, California  94025
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600

  Steven M. Bauer (CSBN 135067)
  Justin R. Rhoades (CSBN 230463)
505 Montgomery Street – Suite 2000
San Francisco, California 94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095

Attorneys for Petitioners
SANFORD STRATEGIC INVESTMENT FUND,
LLC; PRESIDIO GROWTH LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SANFORD STRATEGIC INVESTMENT FUND, LLC; and PRESIDIO GROWTH LLC (Tax Matters Partner), *et al.*,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CASE NO.  C-04-4398-VRW<br><br>RELATED CASES:<br><br>CASE NO.  C-04-4264-VRW<br>CASE NO.  C-04-4309-VRW<br>CASE NO.  C-04-4310-VRW<br>CASE NO.  C-04-4399-VRW<br>CASE NO.  C-04-4964-VRW<br><br>PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO STAY |

## I.     INTRODUCTION

Unless the government's *in camera* declaration is far more detailed than we suspect, the IRS's motion to stay does not begin to tell the Court what is really going on here.

For several years, the IRS has conducted extensive, unilateral discovery against the Petitioners regarding two very well-documented KPMG investment products, called BLIPS and OPIS.  The IRS has issued approximately 2,006 summonses to Presidio companies, obtained over 200,000 documents, and taken numerous depositions from Presidio members and former employees.  The positions of the IRS and Presidio are directly at odds:  the IRS asserts that the investors' tax treatment of these investments is incorrect.  Presidio contends that they were correct and that it was reasonable for the investors to file their returns relying on the "more likely than not" tax and legal opinions issued by KPMG and Brown & Wood, respectively.

In January 2004, the IRS informed Presidio of its desire to designate five of the BLIPS deals as so-called "litigating vehicles."  This meant, one would think, that the IRS was ready to litigate the validity and reasonableness of the partnerships' treatment of the investments. Yet when Presidio paid to the IRS $325,000 in deposits required to challenge the FPAAs in federal court, the IRS began to resist any prompt litigation on the merits.  First, the IRS moved to extend its response date by two months.  Next, the IRS used this additional time to file 63 more administrative cases against the Presidio entities – without regard to the litigating vehicle cases – seemingly to overwhelm petitioner with cases and deposit requirements.  In addition, we have learned that the IRS Criminal Investigation Division has requested the deposition transcripts from Presidio members in the more than 20 civil cases involving these investments throughout the country.

Then, on nearly the eve of the case management conference, the IRS moved to stay just these six cases, ostensibly because of the long-standing criminal investigation led by the IRS Criminal Investigation Division and the Justice Department's Tax Division.  The IRS has not moved to stay any of the dozen civil cases involving the BLIPS investments against Presidio, and it has not stayed the 63 new FPAAs.  In fact, to this day, the IRS continues to press Presidio for yet more unilateral discovery in administrative tax investigations (most recently, an

1  investigation out of the Sacramento IRS office).

2  We respectfully ask the Court to exercise its discretion to deny the government's
3  motion. There are three reasons for the opposition: First, the government's motion to stay is
4  inconsistent with its use of unilateral discovery for the past three years and its designation of
5  these cases as litigating vehicles. The IRS's tactics and timing suggest the possibility that it
6  seeks to prevent a fair determination of the tax issues, and instead to win a surrender by
7  overwhelming force.

8  Second, the alleged harms to taxpayers and to the BLIPS tax and accounting
9  professionals are speculative and have not been borne out in years of discovery and civil
10 litigation. Presidio witnesses – and KPMG and Brown & Wood witnesses – have testified at IRS
11 proceedings, civil depositions, and even before a United States Senate Committee.[1] Presidio
12 suggests that the driving force behind the IRS's motion is its reluctance finally to take a position
13 on the record of what exactly was unreasonable about the taxpayers' tax returns. It appears that
14 the IRS is attempting to force capitulation by manipulating multiple investigations,
15 administrative cases, and the threat of some kind of criminal charge. It is baseless for the IRS to
16 argue that Presidio will somehow gain an advantage by refusing to testify in these cases.

17 Third, the tax treatment of the BLIPS investment is the subject of at least a dozen
18 civil lawsuits against Presidio in federal and state courts throughout the country. In these cases,
19 the investors have sued KPMG, Sidley Austin Brown & Wood, Presidio, and others alleging that
20 they suffered a compensable loss because the IRS has initially rejected the treatment of the
21 BLIPS investment on their individual tax returns. The central issues in each of these case are
22 why the IRS takes this position and whether the IRS is correct in asserting that the reliance on
23 the tax and legal opinions was not reasonable. Unless the IRS moves to stay all of these cases,
24 and succeeds in convincing a dozen federal and state judges that it should not have to justify its

---

[1] To our knowledge, the only person to refuse to testify is a former lawyer of Brown & Wood. (It is not known, at least not publicly, why he chose not to testify.) Presidio is prepared to proceed without his testimony; among other reasons, the tax opinions apparently were approved by the law firm's opinion committee.

rejection of the investors' tax positions, the discovery the IRS seeks to block will occur anyway. Indeed, Presidio intends to take discovery against the IRS in each of these civil cases, as it must, for any fair adjudication on the merits.

For these reasons, Presidio respectfully requests that the Court exercise its discretion to deny the IRS's motion to stay these six related cases. Should the Court entertain the notion of a stay, we suggest that the Court include the following conditions: (1) that all FPAAs against Presidio entities be stayed, particularly including the new 63 FPAAs; (2) that the IRS be ordered to return to Presidio the deposits we have paid in these cases until the stay is lifted; and (3) that the stay be held in abeyance unless and until the Court determines that discovery issued by Presidio actually interferes with the criminal investigation.

## II.     STATEMENT OF FACTS

### A.     Presidio, KPMG, and Brown & Wood Were Involved In Approximately 95 BLIPS Investment Transactions

Presidio was the primary developer of a short- to medium-term investment plan based on trading in foreign currencies. The investment plan required a very sizable investment, even larger borrowing to create a highly leveraged investment, and a significant degree of risk. As such, the investment plan was only suitable for high net worth investors. In calendar year 1999, Presidio was the investment advisor, manager, and an equity participant in approximately ninety "Strategic Investment Funds" ("SIFs") that implemented the investment plan called "BLIPS" (which stands for Bond Linked Investment Portfolio Strategy).[2] Another related entity, Presidio Resources LLC, was an investor as well, along with the high net worth investors.

Through the transactions that are at issue in these cases, the SIFs were to invest in U.S. dollar and foreign currency denominated debt securities of corporate and governmental issuers and enter into forward foreign currency exchange contracts, options on currencies and securities and other investments selected by Presidio, as Managing Member of the SIFs. An

---

[2] "Bond" is a term of art for the Internal Revenue Service and refers to a multitude of different debt instruments and obligations over and above "bonds" as they are understood by most investors.

important part of the SIFs' investment programs were investments which had the effect of shorting so-called "pegged" foreign currencies, which were currencies in which the foreign government (generally an emerging market country) decided to "peg" or fix their country's currency to the U.S. dollar.  The SIFs' investment plan was designed to realize profit on investments when pegged foreign currencies were devalued, or when they came close to being devalued.  The basic concept behind the investment plan (setting aside all the mechanics of implementation) was to agree to exchange a foreign currency for U.S. currency at a predetermined rate of exchange at a particular date in the future.  When such transactions are highly leveraged and the currency positions covered with large amounts of borrowed funds, the returns on the actual amount of the investor's capital can be huge.  For the tax year 1999[3], Presidio as well as the other entities involved in the BLIPS investments, filed partnership tax returns.  Six of these returns are at issue in the cases presently before this Court.

### B.    The IRS Has Been Investigating Presidio Since 2001

For much of the past four years, the IRS has pursued an investigation of Presidio. *See* Declaration of Steven Bauer filed herewith ("Bauer Decl."), at ¶ 3.  Presidio has been cooperating with the IRS investigations concerning the transactions at issue since 2001.  *Id*.  As part of that process, the IRS has directed approximately 2,006 separate summonses to Presidio and related entities.  *Id*. at ¶ 4.  In response, Presidio has produced approximately 214,640 documents to the IRS.  *Id*. at ¶ 5.  Presidio' principals and former employees have also appeared for numerous IRS sworn depositions and testified before a U.S. Senate Subcommittee.  *Id*. at ¶ 6.  At no time during this investigation has Presidio refused to produce information or have any of the individuals related to Presidio invoked the Fifth Amendment in response to the IRS's investigation.  *Id*.

---

[3]  For the case of *Olympus Strategic Investment Fund et al. v. United States*, Case No. 04-4399, the relevant tax year is 2000.

**C.    Presidio Is A Party In Twelve Other Civil Suits Directly Related To BLIPS Investments and Another Eleven Suits Related to OPIS Investments**

In addition to these six IRS lawsuits, Presidio is involved in a dozen other cases involving the BLIPS investments. *Id*. at ¶ 7. In those cases, Presidio has been sued, along with KPMG and other entities, by individual BLIPS investors. These cases, filed as early as June 2003, are pending in federal and state courthouses across the country. In conjunction with those lawsuits, Presidio has produced thousands of pages of documents and its principals have appeared for numerous depositions. *Id*. at ¶ 8-9. To date, those principals have not invoked their Fifth Amendment privileges in response to questions posed by any of the plaintiffs. *Id*. at ¶ 9.

While the plaintiffs' theories in these civil suits vary, one issue common to all of these cases is the IRS's treatment of the BLIPS investments. Central to the plaintiffs' allegations and to Presidio's defense in each suit is whether the plaintiffs' tax treatment of their BLIPS investments was appropriate. To that end, Presidio (and other parties, presumably) will submit discovery to the IRS concerning its treatment of the BLIPS transactions and the internal decision-making that led to that treatment. Presidio anticipates that this discovery will be very similar, and identical in certain respects, to the discovery that will take place in the six cases pending before this Court. As an example, the case of *Sanford Strategic Investment Fund, et al. v. United States*, Case No. 04-4398-VRW, involves a strategic investment fund in which one Darren M. Keeter was an investor. *See* Bauer Decl. at ¶ 11. Mr. Keeter is also a plaintiff in a civil suit in federal court, titled *Keeter v. KPMG, et al.*, (N.D. Ga. Case No. 1:04-CV-3759-WSD), filed Oct. 11, 2004. *See* Bauer Decl. at ¶ 10. The discovery in *Sanford* and *Keeter* will be substantially the same.

**D.    The IRS's "Litigating Vehicles"**

In June and July 2004, the IRS issued Final Partnership Administrative Adjustments ("FPAAs") to the respective partners in eight BLIPS investments.[4] Through correspondence with the strategic investment fund partners, the IRS designated several of these

---

[4]   Two of these FPAAs are being challenged in federal district court in Texas.

FPAAs to be "litigating vehicles," meaning that they would be test cases in court and the IRS would not consider resolving them through settlement. *See* Bauer Decl. at ¶ 15. In October 2004, Presidio, as the "tax matters partner" of the respective strategic investment funds, filed suit in federal court, challenging the IRS's adjustments in these six FPAAs. In conjunction with these petitions, Presidio deposited $325,000 – the amount that Presidio would be required to pay if the Court concluded that each of the IRS's proposed adjustments in the FPAAs were correct.

On December 15, 2004, the IRS moved this Court for an extension of time to answer the six petitions, basing the request on a need to assess jurisdictional and venue questions. *See* United States' Motion for Extension of Time to Answer or Otherwise Respond, December 15, 2004 at 3. That motion was granted. In the seven days following the IRS's request for additional time to respond, the IRS proceeded to mail 63 more FPAAs to Presidio for other strategic investment funds in which Presidio was a partner. *See* Bauer Decl. at ¶ 13. In September 2004, three months prior to filing these 63 FPAAs, the IRS had already entered into an agreement with Presidio to extend the time for the IRS to file assessments on these 63 partnerships until December 31, 2005. *See* Bauer Decl. at ¶ 16. Thus, the IRS filed the 63 new FPAAs over one year before they were due. Under FPAA regulations, these would require substantial deposits of alleged tax deficiencies before Presidio can challenge them in court.

On February 7, the IRS answered the six petitions pending before this Court. On February 22, the IRS filed amended answers for all six petitions. Eight days later, and less than one week before the Case Management Conference, the IRS filed this motion to stay all six cases. The motion was based in large part on the declaration of a United States Attorney that was not provided to the Petitioners.

### III. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE STAY

#### A. A Stay Would Allow The IRS To Avoid A Challenge To Its Litigating Vehicles On The Merits

It is a strong dose of rhetorical flourish for the IRS to argue that: "they (Presidio) cannot seriously claim that they too would not benefit from the full airing of the facts which can only occur once all the evidence is available without restriction to the parties." Motion at p. 14.

1   An orderly litigation of the merits of the investments is exactly what Presidio wants. By issuing
2   FPAAs on "litigating vehicles," the IRS started the litigation process. But now that Presidio has
3   challenged the IRS's allegations, the IRS wants to stop the process it started. The motion to stay,
4   coming on the eve of the start of real discovery in this case, appears to be a tactical move to
5   block Presidio from learning exactly what the IRS contends is wrong about the BLIPS
6   investments and the tax and legal opinions. From what we can see, there is no reason to believe
7   that there could not be a full airing of the relevant facts here, namely, what is the basis for the
8   IRS's challenge to these well-documented investments involving some of the country's most
9   wealthy and sophisticated investors, and its premiere accounting and law firms.

10          First, the IRS has been taking full discovery of the facts from Presidio for nearly
11  four years. Presidio has cooperated with the IRS since 2001 and the IRS has issued over 2,000
12  summonses. *See* Bauer Decl. at ¶¶ 3-4. At all times Presidio has cooperated with these requests.
13  Now, suddenly, any discovery that Presidio might seek in response – including even an
14  appropriate case management conference statement –  allegedly poses an imminent threat to
15  justice. The timing of the events in these cases, described above, suggest that the IRS has made
16  a conscious, tactical decision to seek maximum discovery, force thousands of dollars of deposits,
17  and then try to shut the cases down before providing any reciprocal facts or legal positions.

18          Second, after these cases were filed, the IRS filed another 63 FPAAs, swamping
19  Presidio with paper and requiring huge jurisdictional deposits. Is this the fair price for Presidio's
20  failure to surrender immediately to the allegations in the "litigating vehicles"? The IRS served
21  eight FPAAs during the summer of 2004 and subsequently designated several of them as
22  "litigating vehicles." Presidio challenged those FPAAs in this Court and paid the jurisdictional
23  deposit. Then, just as those cases seemed ready to progress, the IRS sought a two month
24  extension of time to answer in December 2004. Within one week of the IRS's request for an
25  extension, it issued the additional 63 FPAAs to Presidio.

26          There was no reason that those 63 FPAAs had to be issued at that time, other than
27  sheer tactics to avoid fair litigation on the merits. Presidio had already agreed to a statute
28  extension, so that the IRS could have until December 31, 2005 in which to issue these additional

FPAAs. The IRS chose to issue them a full year early, coincidentally at the same time that Presidio was attempting to proceed on the original "litigating vehicles." There is no reason for the IRS to currently increase the number of cases ten-fold except to overburden Presidio so that it could not litigate these six test cases effectively.

The IRS's motion several times raises the old analogy of using discovery both as a sword and a shield. How does that analogy apply in this case? The IRS has taken all of the discovery it can over the past several years, forced hundreds of thousands of dollars in deposits, and then, at the moment that it would have to disclose the reasoning behind its tax assessments, the IRS issues 63 more FPAAs and moves to stay the cases that were headed towards discovery. These tactics are an unfair manipulation of the IRS's regulatory power. For this reason alone, the motion to stay should be denied.

**B.  The IRS Has Not Met The Legal Standard For A Stay**

    1.  The IRS Has Not Shown a Nexus Between These Cases and the Criminal Investigation

The IRS's motion rests entirely on speculation as to what will happen should these six related cases proceed to discovery.[5] At no point does the IRS identify anything specific that might be disclosed to the detriment of the criminal investigation. Instead, the IRS speaks of the possibility that witnesses will learn of matters pending before the grand jury or that witnesses may be subject to "premature" cross-examination. The generalizations continue with the IRS repeatedly warning of giving Presidio "earlier and greater" access to discovery than it would be entitled under the Federal Rules of Criminal Procedure. *See* Motion at 7. Yet the IRS offers nothing concrete showing that what it decided with respect to these investment activities, all of which concluded in 1999 or 2000, is somehow related to the current criminal investigation. Having itself initiated the process leading to these cases, the IRS now cries that "the sky is falling," and claims that *any* discovery, *including Rule 26 initial disclosures*, could undermine

---

[5]  Presidio is obviously unaware of the contents of the Neiman Declaration but would be happy to respond to any arguments made therein about the propriety of a stay should the Court disclose the contents of that Declaration.

efforts of the Tax Division and IRS-CID investigation in New York. Without pointing to any specific items that truly would prevent a fair adjudication of this case, the IRS has not come close to meeting its burden to justify staying these cases.

    2.  <u>The Legal Standards Cited by IRS Counsel Against a Stay</u>

The IRS cites to *Federal Savings and Loan Insurance Corp. v. Molinaro*, 889 F.2d 899 (9th Cir. 1989), as the proper test for granting a stay. In affirming the district court's decision to deny the requested stay, the Ninth Circuit articulated a five-part test to determine whether a stay should issue pending the conclusion of related criminal proceedings:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id*. at 903. Applying these five factors, the IRS's motion to stay should be denied.

    *a.*  *Plaintiffs Have a Substantial Interest in Proceeding Expeditiously and Will be Prejudiced if There is Delay*

Presidio has deposited considerable sums of money with the IRS in order to file these six cases. Presidio anticipates depositing additional sums if and when it decides to challenge the remaining 63 FPAAs. If the IRS's motion is granted, all of that money will remain in the IRS's coffers until the criminal proceedings are complete – either through the decision of the grand jury not to return an indictment or until a verdict is rendered in a criminal trial. Until that time, Presidio's funds will sit, useless to Presidio, in the IRS's account.

Furthermore, through these cases, Presidio seeks a judgment that the IRS was incorrect in its legal determinations concerning the BLIPS investments. Such a declaration might resolve the civil suits in which Presidio has been named as a defendant. If these cases are stayed indefinitely, Presidio will be forced to continue to litigate this core issue in dozens of other courts where the civil suits are pending. Having one Court address the legal merits of the investments, with the IRS as a party, will do much to resolve those other civil cases.

### b. There is No Burden Placed on the IRS

The IRS started this litigation by issuing the "litigating vehicle" FPAAs. The IRS and the Tax Division have been involved in years of criminal and civil investigations regarding these very same investments. There is no unfair burden placed on the IRS finally to take a public position on the merits of thoroughly documented investments and tax returns.

The IRS's argument that the Petitioners will somehow use the Fifth Amendment to block this case is particularly wrong. First of all, in the four years since the IRS began investigating these investments, none of the principals or employees of Presidio or its related entities has invoked his or her Fifth Amendment rights. This is true regarding IRS administrative depositions, civil cases, and even U.S. Senate investigations. The IRS has no basis to request a stay by claiming that these persons will suddenly invoke their rights against self-incrimination.

Second, an assertion of the Fifth is not uncommon in civil litigation, and there are evidentiary rules for dealing with it. As stated by the Third Circuit:

> [d]efendant can object to depositions or interrogatories directed against [them] in a civil action where the answers might incriminate [them] in a pending case…But the contention that an actual or potential defendant in a criminal case should not even be put to the difficult choice of having to assert the privilege in a related civil case was rejected.

*DeVita v. Sills*, 422 F.2d 1172 (3d Cir. 1970) (citations omitted) (vacating order granting stay); *see also Driver v. Helms*, 402 F. Supp. 683, 685-86 (D.R.I. 1975) (denying defendants' motion to stay pending resolution of criminal proceeding).

### c. Judicial Economy Disfavors A Stay

The decision to stay these cases does not harm the judicial resources or convenience of this Court or the court(s) having jurisdiction of the criminal investigation. These cases all involve identical legal issues and have been properly noted as related by this Court. Staying them at this point will mean only that they will have to be litigated, in substantially the same form, at some point in the future. Regardless of the outcome of the criminal investigation or this stay motion, the issues will be joined in the various civil cases throughout the country.

    *d.*  *The Interests of Persons Not Parties to this Litigation Counsels Against a Stay*

  There are dozens of civil plaintiffs whose cases will be adversely affected should this Court grant a stay. Even if the IRS does not seek a stay in those other cases – a result that would defeat the IRS's purported goals of shielding it from discovery – it is likely that the IRS would resist those parties' requests for documents or depositions. A determination of the IRS's justification for its treatment of the BLIPS investments is critical to the resolution of the other civil cases and a stay in these six cases would likely encourage the IRS to stonewall discovery attempts in the other cases, preventing their full and final resolution. Those plaintiffs are entitled to their day in court and the IRS's actions here only prevent resolution of these other cases.

    *e.*  *The Interests of the Public are Not Injured if a Stay is Denied*

  There is no compelling public need for a stay. The pending criminal investigation involves the tax treatment of certain investments made five years ago. This is not the type of case in which a continuing criminal enterprise is being investigated at the same time that its participants are seeking discovery in closely related civil cases in efforts to hamper the investigation. There is no danger to the public should the civil cases be allowed to proceed. Moreover, the investments at issue in these suits have been the subject of extensive public commentary and Congressional testimony. To now close the door on discovery would prevent the public from learning more about the IRS's treatment of these investments. In short, there is no reason to stop civil proceedings to let a criminal investigation "play through."

    3.  <u>The IRS's Cases Do Not Support Its Position</u>

  In support of its requested stay, the IRS relies primarily on *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962). In that case, both the trial court and the court of appeals noted that the only reason the plaintiff was engaging in civil discovery was to learn facts about the pending criminal case. *Id*. at 483. The Fifth Circuit wrote that "[i]t is a fair inference from the record that the filing of the suit for a refund, or at least the filing of the motion for discovery, was a tactical maneuver to enable the taxpayer to gain advance information on the criminal case." *Id*. at 482. As a result, the Fifth Circuit reversed the trial court and held that a stay would have been

proper. Here, however, Presidio has not filed its petitions challenging the FPAAs as a means to obtain criminal discovery. Had Presidio not challenged the adjustments in the FPAAs, the IRS could have begun collections proceedings against Presidio and its related entities. The petitions were a necessary step to prevent payment of additional taxes. Further, there has been no showing that Presidio is trying to use the Federal Rules of Civil Procedure to obtain criminal discovery. The only discovery-related pleading to date has been a joint case management statement which proposed initial disclosures and standard discovery on a mutually agreeable timetable. Should this Court be inclined to grant a stay, Presidio suggests that the Court hold its decision in abeyance unless and until a time at which Presidio seeks discovery which the Court believes will interfere with the criminal investigation.

Many of the other cases cited by the IRS are equally distinguishable because they involve motions to extend the time to respond to discovery requests, rather than motions to stay the case as a whole. In those cases, the courts were confronted by narrowly tailored requests to protect certain information from disclosure. Here, the IRS seeks to put a full-stop to six pending civil litigations. In *U.S. v. Maine Lobstermen's Association*, 22 F.R.D. 199, 201 (D. Me. 1958), cited by the IRS, the court did not stay the matter, but rather deferred the depositions of third-party individuals (lobstermen) by the defendants until after a criminal case was resolved. A similar distinction can be found in *United States v. A.B. Dick Co.*, 7 F.R.D. 442, 443 (N.D. Ohio 1947), where the court refused to compel the Government to answer interrogatories propounded under Rule 33 in civil antirust proceedings until companion criminal antitrust proceedings had been completed. *See also U.S. v. Linen Supply Institute, Inc.*, 18 F.R.D. 452, 452-53 (S.D.N.Y. 1955) (granting an extension of time for Government to answer interrogatories propounded in civil antirust proceedings until companion criminal antitrust proceedings had been resolved); *Penn v. Automobile Ins. Co.*, 27 F. Supp. 336, 336-337 (D. Ore. 1939) (denying plaintiff's motion to compel evidence in action to recover for a loss on certain fire insurance policies when plaintiff is under investigation for arson); *United States v. Kordel*, 397 U.S. 1, 9 (1970) (upholding convictions of officers who answered interrogatories in a suit initiated by U.S. against corporation for libel). These cases *do not* address the question of whether a complete

stay of a case is proper. They only deal with the protection of very specific information pending the completion of related criminal proceedings.

### C. Regardless Of Any Stay, Civil Discovery Of The IRS's Positions Will Proceed Elsewhere

The IRS bases its request for stay primarily on the idea that these cases should not be allowed to advance, because to do so would allow Presidio to take discovery from "the government" that might interfere with a pending federal criminal investigation in the Southern District of New York. *See* Motion to Stay at 3-4. The IRS's motion ignores the fact that this very same discovery will undoubtedly take place in the other civil cases in which Presidio is a party. Those cases involve the same investment vehicles – namely BLIPS – and the IRS's treatment of those investments is a central issue in each case. Whether the IRS is correct in its determinations concerning the legitimacy of those investments will substantially affect the outcome of those cases. As a result, both the plaintiffs in those cases and Presidio will seek extensive third-party discovery from the IRS. Staying these six cases will not prevent private litigants from taking discovery from the IRS concerning its analysis of the BLIPS investments.

As noted above, both the *Sanford* and *Keeter* cases involve Presidio, the same plaintiff and the same investment. Thus, Presidio and the plaintiffs in that case will be seeking discovery from the IRS on exactly the same topics that are at issue in *Sanford* which the IRS now seeks to stay. Even if this Court were to grant the motion to stay, identical discovery would occur in a different federal court, defeating the goals advanced by the IRS in favor of the stay.

Further diminishing the need for a stay is the fact that the majority of the civil cases have begun discovery, and at least one of them is set for trial this fall. *See Tolt v. KPMG, et al.*, (Harris Cty. Tex. Case No. 2003-69957), filed Dec. 30, 2003. The proverbial horse is already out of the barn and staying these cases will not stay all discovery concerning these investments. Nor can the IRS protest that it is not aware of the status of these other cases, as the IRS has requested that Presidio produce the same documents it has produced to those plaintiffs.

**D.     The Court Should Disclose Contents Of Neiman Declaration**

In its March 2 Order, this Court granted the IRS's request to file the Neiman Declaration "under seal."  The Court should reconsider this Order in light of the fact that the IRS has provided insufficient information to allow Presidio to respond to the motion to stay.  The Gibson Declaration does not provide enough detail for Presidio to be able to understand and rebut the need for a stay.  In comparable situations in which the government opposes the disclosure of information pursuant to a FOIA request, Ninth Circuit law requires that the government submit a detailed affidavit of the information for which it is opposing disclosure, in addition to an index of the documents.  Merely submitting an *in camera* affidavit is insufficient.  *See Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) ("resort to *in camera* review is appropriate only after the government has submitted as detailed public affidavits and testimony as possible."); *Lion Raisins v. United States Dept. of Agriculture*, 354 F.3d 1072, 1083 (9th Cir. 2004) ("district court may rely solely on *ex parte* affidavits only in the exceptional case").

Further counseling against filing of this Declaration under seal is the fact that the IRS should not be able to file 69 FPAAs, requiring hundreds of thousands in jurisdictional deposits, and then once that money has been paid, obtain an indefinite stay of the proceedings based on secret information.  The IRS's tactics force Presidio to deposit the sufficient funds to challenge the FPAAs, but then freeze that money in place until a vaguely-described criminal investigation is complete.  In this situation, the Court should either disclose the contents of the Declaration or should fashion alternative relief to prevent Presidio from having to lock its money up with the IRS for an indefinite period of time.

**E.     In Fairness, Any Stay Would Require Certain Conditions**

As we have argued, a broad stay of these cases would be unfair to Presidio and would not even achieve what the IRS claims a stay would accomplish.  We believe that a discretionary stay should include the following conditions:  (1) that all FPAAs against Presidio entities be stayed, particularly including the new 63 FPAAs; (2) that the IRS be ordered to return to Presidio the deposits we have paid in these cases until the stay is lifted; and (3) that the stay be

1 held in abeyance unless and until the Court determines that discovery issued by Presidio actually
2 interferes with the criminal investigation.

3 **IV.    CONCLUSION**

4       For the foregoing reasons, Presidio respectfully requests that the Court deny the
5 IRS's motion for a stay, or alternatively, issue a discretionary stay on the conditions Presidio has
6 set forth above.

Dated:  March 7, 2005                              Respectfully Submitted,


                                                          LATHAM & WATKINS LLP


                                                          By:   /s/ Justin R. Rhoades
                                                                Justin R. Rhoades
                                                                Attorneys for Petitioners